JAMES F. JOHNSTON v. JAMES E. LEMOND.

*Action to Recover Land—Release of Mortgage—Judgment Liens.*

Under an arrangement between mortgagor, mortgagee and a third party, the mortgagee endorsed upon the mortgage a release of seventy acres of the mortgaged land sold to the third party, and upon the mortgage note a receipt of a certain sum, as being· the amount received from the sale of said land to the third party; thereupon, the mortgagor conveyed the seventy acres of land to the third party, who executed his note, secured by mortgage thereon, to the mortgagee for the purchase-price.  Subsequently the first mortgage was cancelled of record:  *Held*, that the legal title did not, by these transactions, revest for an instant even in the mortgagor, and docketed judgments against the mortgagor acquired no lien on the seventy acres of land.

CIVIL ACTION, tried before *Hoke, J.*, at Fall Term, 1891, of MECKLENBURG Superior Court.

The plaintiff brought this action to recover possession of the land described in the complaint.

The defendant denies the material allegations of the complaint.  He alleges that the plaintiff claims title to this land by virtue of a Sheriff's sale and deed made under and in pursuance of certain executions issued upon certain docketed judgments, which he contends constituted a first lien upon it. He further alleges that such lien is unfounded; that long before the said judgments were entered, to-wit, on the 1st day of January, 1884, the owner of the land, who was the defendant in the judgments, E. H. Hinson, executed to J. C. Barnhardt a deed of mortgage of the same with power of sale therein to secure certain large debts therein specified, and he claims to derive title to the land in question from the said mortgagee and mortgagor, etc.

On the trial the plaintiff put in evidence—

1. Several judgments against said E. H. Hinson, which were duly docketed in the Superior Court of said county in January and February of the year 1887.

2. Executions which were duly issued from said Court to the Sheriff of said county on the said judgments, together with the return of the Sheriff thereon, showing a levy upon the land in dispute, as the property of said E. H. Hinson.

3. Deed from the said Sheriff to plaintiff, bearing date 6th of January, 1890, conveying the said land to plaintiff in pursuance of the levy and sale, under the above-mentioned executions.

4. Deed from said E. H. Hinson to J. M. Hinson, conveying the said land, dated 12th September, 1887.

5. Deed from J. M. Hinson to defendant, dated 30th January, 1888, conveying said land.

The defendant put in evidence, in support of his title—

1. Mortgage deed made by said E. H. Hinson to one J. C. Barnhardt, dated 1st January, 1884, and registered in said county on 15th January, 1884, conveying the real estate described in the complaint, together with other real estate therein mentioned, to secure the sum of $3,000, with power of sale in case of default on or before the 1st day of January, 1885.

2. Mortgage from J. M. Hinson to J. C. Barnhardt, conveying the land in dispute to secure the sum of $550, with power of sale, dated 12th September, 1887, and registered 21st September, 1887.

3. Deed from E. H. Hinson to J. M. Hinson, dated 12th September, 1887, and registered September 21st, 1887, conveying the land in dispute for the consideration of $470.

4. An endorsement in writing upon the original mortgage from E. H. Hinson to J. C. Barnhardt, above-mentioned, which endorsement was in words as follows:

"I hereby release from the within mortgage seventy and one-half acres, adjoining the lands of J. W. Swaringen and others, and described within as the land on which B. S. Gray lived and sold to J. M. Hinson September 12th, 1887.

J. C. BARNHARDT."

5. The endorsement on the note given by E. H. Hinson to J. C. Barnhardt, secured by the mortgage above referred to. Said endorsement was in the following words:

"$470. Received on the within note four hundred and seventy dollars, being the amount derived from the sale of seventy and one-half acres of land to John M. Hinson, being the place where B. S. Gray formerly lived.

September 12th, 1887.          J. C. BARNHARDT."

6. Mortgage from the defendant to J. C. Barnhardt, conveying the land in dispute to secure $350, dated 30th January, 1888, and registered 8th February, 1888.

This mortgage was paid and cancelled of record on 8th November, 1888.

7. Deed from J. M. Hinson to the defendant, conveying the land in dispute, dated 30th January, 1888, and registered 2d March, 1888, consideration $500.

The defendant then introduced J. C. Barnhardt as a witness, who testified as follows:

"I am the mortgagee in the mortgages made by E. H. Hinson and others. I recollect the time of the deed from E. H. Hinson to J. M. Hinson and the mortgage from J. M. Hinson to me. They were executed all at the same time. The transaction was fully understood by all. It had been going on for some time—two or three weeks or a month. The agreement was that E. H. Hinson was to convey the seventy and one-half acres of land to J. M. Hinson, and J. M. Hinson was to give me his notes for $470, the purchase-price

of the property, and give me a mortgage on the place to secure it. After the mortgage was made and the note was given, I gave E. H. Hinson credit for the amount on his original note and made the entry on the back of the mortgage as it appears. It was understood by all the parties what was to take place. I had no agreement about it except I was to be secured. E. H. Hinson was to sell the land to J. M. Hinson in case I consented, and I was to be made safe. I would not have consented, but I obtained additional security at the time I took the mortgage from J. M. Hinson. E. H. Hinson said there was no judgment liens against him, except some in favor of his son and these would never give any trouble." (It appears from the judgments and executions introduced that the sale was not made under any execution in favor of E. H. Hinson's son).

" The land retained in E. H. Hinson's mortgage is worth $2,000 or more, and there is due me still on that debt $1,700, and interest at eight per cent. from January, 1891. I put the release on the mortgage at my house. E. H. Hinson was released on the note for $470. There was no agreement that I was to hold the title for the benefit of J. M. Hinson. The purpose of the agreement was that I was to part with all the interest I had under the E. H. Hinson mortgage and rely on the mortgage given by J. M. Hinson. There were additional lands put in the J. M. Hinson mortgage, and I also let J. M. Hinson have $80 additional.

"J. M. Hinson and defendant Lemond consulted me in their trade. Lemonds bought the land from J. M. Hinson at $500. Nothing was said about retaining the legal title under E. H. Hinson's mortgage to me for the benefit of anybody. If I had known of the other judgment liens I would not have entered into the arrangement. J. M. Hinson's mortgage to me was satisfied by defendant Lemond giving his note and mortgage for the amount due on it. J. M. Hinson sold the other land in the mortgage and made a pay-

ment on his mortgage, reducing amount to $350. J. M. Hinson then sold the land in dispute to defendant, conveyed it to him, and defendant executed his note and mortgage to me for this balance and I entered satisfaction of the J. M. Hinson mortgage. This satisfaction of Hinson's mortgage may have been entered some time ago. The deed from J. M. Hinson to J. E. Lemond and the mortgage of Lemond to me were one and the same transaction. Lemond paid off his mortgage to me in money and took up his note. He paid the money a short time before his mortgage was cancelled."

J. E. Lemond, the defendant, testified: "I knew the land when it was sold to J. M. Hinson, and $470 was a fair price for it. J. M. Hinson made some improvements on it and I gave $500 for it. I paid Hinson $150, and Colonel Barnhardt $350. I had no actual notice of the judgment when I bought and paid the money."

This last statement was permitted, after objection by plaintiff.

John M. Hinson, witness for defendant, testified: "I sold the land to E. H. Hinson originally, and then I bought it back from him. Four hundred and seventy dollars was a fair price for the land. When I repurchased the land from E. H. Hinson I had no actual notice of the judgments."

This last statement was permitted, after objection by plaintiff.

It was agreed between the parties that his Honor might, upon the foregoing evidence, direct the verdict to be entered as seemed to him proper, and that if after further consideration of the questions of law reserved he should be of a different opinion, that he might then direct the verdict to be changed. In accordance with this agreement, his Honor at first directed the first issue to be answered "No," but after hearing a full argument he directed the former finding to

be set aside, and the first and second issues to be answered "Yes," and it was so entered.

There was a motion for a new trial. Motion denied, and defendant excepted. There was judgment for the plaintiff, from which the defendant appealed.

At the proper time, in the progress of the trial, the defendant asked the Court to give the jury divers special instructions, and among them such as warranted the following, among other assignments of error: .

1. That the verdict for the defendant was right, and the defendant should have had judgment thereon.

2. That if the evidence was believed, the answer to the first issue should have been "No," and the verdict should have been for him.

7. That by a proper construction of the endorsement of Barnhardt on the E. H. Hinson note and mortgage, it appears that Barnhardt sold the land therein described to J. M. Hinson and to the defendant, and the same in equity vested in J. M. Hinson and in the defendant, or at least that the said endorsement in writing operated as a contract between the parties that Barnhardt was to convey the said realty to J. M. Hinson and the defendant.

8. That the contract of Barnhardt thus to convey the *locus in quo* to J. M. Hinson and the defendant being outstanding, the *locus in quo* embraced in the contract was not the subject-matter of execution, and the plaintiff acquired no interest therein by virtue of his purchase at executor's sale.

*Messrs. Jones & Tillett* (by brief), for plaintiff.
*Messrs. Burwell & Walker* (by brief), for defendant.

MERRIMON, C. J.—after stating the case: The validity of the mortgage from E. H. Hinson to J. C. Barnhardt of Jan-

uary 1st, 1884, is not questioned, and it embraced the land in controversy.

The alleged liens upon it of the docketed judgments underlying the plaintiff's title were created long after that mortgage was executed, and the plaintiff got no title by virtue of the Sheriff's deed under which he claims, unless the mortgagee effectually discharged it as to this land and revested the title in the mortgagor. In that case the liens of the judgments attached and the title passed to the plaintiff.

We think the defendant was entitled to have the Court instruct the jury that, if they believed the evidence, they should render a verdict upon the issues submitted to them in favor of the defendant, because the land was not discharged of the mortgage in favor of the mortgagor, nor did the title revest in the latter. The title was in the mortgagee, coupled with a power of sale that authorized him to sell the land. An arrangement was made satisfactory to the mortgagor and to the mortgagee, whereby the latter in substance and effect, sold this particular tract to J. M. Hinson for $550. The land was not to be reconveyed to the mortgagor. The evidence tended to show that the transaction was in good faith, as did also the acts done to effectuate it. The mortgagee made this informal entry on the mortgage deed:

"I hereby release from the within mortgage seventy and one-half acres adjoining the lands of J. W. Swaringer and others, and described within as the land on which B. S. Gray lived, and sold to J. H. Hinson.

      (Signed)                J. C. BARNHARDT."
September 12, 1887.

At the same time, and as part of the same transaction, he made this entry on one of the mortgage notes:

" $470.  Received on the within note four hundred and seventy dollars, being the amount derived from the sale of seventy and one-half acres of land to John M. Hinson, being the place where B. S. Gray formerly lived.

    (Signed)       J. C. BARNHARDT."
September 12th, 1887.

These entries were evidence, along with other evidence, to show the nature and purpose of the transaction, and such evidence tended to prove a sale of the land as just indicated. So far as appears, there was no purpose to revest the title in the mortgagor at all.   There was no reconveyance or release to him, nor was there necessity that there should be.   He did not pay the purchase-money—it was not paid for him, nor were there any words of reconveyance to him.   The fact that he executed a deed for the same land to J. M. Hinson did not, in view of it, prove that he had the title—it only had the effect to conclude him as to all claim, equitable or otherwise, as mortgagor, and was not unreasonable or improper as a cautionary measure.   The mortgagee failed to convey the legal title to J. M. Hinson   The entry on the mortgage deed made by him was no more than a pertinent memorandum in writing—it was not sufficient as a conveyance.   Nor did the fact that the mortgagee took the note of J. M. Hinson for the purchase-money and a mortgage from him of the same land to secure the same, at all affect the transaction adversely.   The mortgage debt was due to him, and it was competent for him to receive payment as he did in pursuance of an honest arrangement.  It does not appear that the mortgagor derived any benefit from it, except the discharge of a part of the mortgage debt.   If it be granted, that the parties did not really fully understand the legal effect of what they did, the evidence all goes to show that the title to the land did not revest in the mortgagor, nor was

it intended that he should in any sense become the complete owner of it.    If they believed that the title ought to pass to J. M. Hinson through him, that was no more than a mistake that was not consummated, as it turned out.    It is true that John M. Hinson said he repurchased from the mortgagor, but that plainly implies that the latter and he agreed that he should buy it from the mortgagee.  He did not, and could not under the circumstances, buy it from the mortgagor—he could only buy it effectually from the mortgagee, and that he did, because the latter gave his assent and his consent to the arrangement as effectually as if he had originated it.    If the title had revested in the mortgagor under misapprehension, it might be that the lien of the docketed judgment, would have attached, as contended by the plaintiff.    But there was no evidence to prove that it did revest for an instant, or at all.

It is unnecessary to advert further to several views of the case presented and elaborately argued by the counsel of the parties.

Error.