JOSEPH MORING et al. v. H. C. PRIVOTT et al.

(Filed 26 February, 1908).

1. **Deeds and Conveyances — First and Second Mortgage — Purchaser — Release by First Mortgagor — Sale by Second Mortgagor—Bid by Purchaser Under Mistake—Equities.**

    Plaintiffs, at an adequate price, bought a portion of a tract of land subject to a first and second mortgage lien, held by different persons, paid the purchase price, sufficient only as part payment, to the holder of the first lien, and had a release executed by him to the land embraced in the deed. The defendant, the holder of the second lien, foreclosed upon the whole tract, including that embraced in plaintiffs' deed, and it brought sufficient to pay the amount of the first lien. Plaintiff Joseph Moring was an ignorant man, and, acting under advice honestly given, bid and paid $650 for the purpose of protecting his title, and afterwards brought suit to recover it: *Held*, a court of equity will decree that the plaintiffs were subrogated to the rights of the holder of the first lien *pro tanto*, and entitled to recover.

2. **Mortgagor and Mortgagee—First and Second Mortgagee—Purchaser—Release by First Mortgagee—Subrogation.**

    Subrogation is of an equitable character, not dependent upon contract, and will not operate to produce injustice. Hence, when it appears that the security of the holder of a second mortgage is not impaired by the release by the first mortgagee of a part of his security for an adequate consideration, and that a further payment made to the second mortgagee, in ignorance and by mistake, would be inequitable to the purchaser, he may recover it from the second mortgagee.

3. **Same—Discharge or Payment.**

    A mortgage debt, when paid by one in subrogation of the rights of the creditor, will operate either as a discharge or in the nature of an assignment, as the equities between the parties may demand.

**4. Mortgagor and Mortgagee—Sale Under Second Mortgage—Application of Proceeds.**

A sale under a second mortgage can only convey the equity of redemption of the mortgagor, and, as a general rule, the proceeds should be applied to the payment of his debt; except when there is a conveyance of additional land in the second mortgage, with the provision that the first mortgage debt should be paid with the proceeds of sale of the land subject to both mortgages, before the land covered only by the second mortgage should be sold and the proceeds applied to its satisfaction.

CIVIL ACTION, heard by *O. H. Allen, J.,* at Fall Term, 1907, of the Superior Court of CHOWAN County.

This case was submitted to the court upon the following case agreed:

1. On 13 March, 1891, J. H. Piland executed to J. H. Blount, trustee, a certain deed of trust, duly recorded on its day of date in Chowan County, on certain lands of said Piland, therein described, to secure the payment to M. H. White of a certain note given by said Piland for the purchase money of said land.

2. On 22 December, 1904, said Piland and wife executed to W. S. Privott, trustee, a second deed in trust to secure a certain note to H. C. Privott upon a portion of the lands aforesaid. This deed in trust was duly recorded on its day of execution.

3. On 9 January, 1906, in consideration of the $1,500 paid to M. H. White, said Piland, his wife being dead, executed to the plaintiffs a deed for a portion of the land conveyed to Blount and Privott, as aforesaid; and the money, $1,500, same being the purchase price, and a fair and full price, for the land conveyed in said deed, was paid to M. H. White and credited on the J. H. Piland note, being less than the sum due upon the said note; and, in consideration of said amount, said White executed the following paper-writing, viz.:

"This is to certify that I hereby release all of the claims I hold against the lands deeded by J. H. Piland to J. R. Moring, of date 10 December, 1895, and also lands contained in deed from J. H. Piland to Jules and Joseph Moring, dated this day.                                   M. H. WHITE.

"This 9 January, 1906."

The execution of the deed, etc., and of the paper-writing, and the payment of the money, were all parts of the same transaction.   At the time of this transaction, said defendants in nowise assented or became parties to the same, nor had they knowledge of the same at the time.   Jules and Joseph Moring are the plaintiffs, and the deed of Piland to them and the release of White to them were duly and respectively recorded.

4. At the time of this transaction it was mutually understood and agreed, without any knowledge or assent of defendants, that the plaintiffs were to take and hold, in consideration of the said $1,500 paid, all the right, title and interest of said White and of said Piland in and to the land then conveyed and released to them.   The said plaintiffs immediately entered into possession of said land.

5. On 23 April, 1906, Privott, trustee, after due advertisement, sold at public auction, first, the J. H. Piland land, in the deed of trust to him conveyed, other than the land conveyed and released aforesaid unto plaintiffs, for the sum of $2,100, with which said trustee discharged and paid upon the note of Piland to M. H. White what remained due thereon, to-wit, $2,100, after the credit given of the $1,500 paid by plaintiffs.   Said trustee then proceeded to sell the land conveyed and released by Piland and White to plaintiffs; whereupon, the plaintiffs, colored men, in ignorance of their rights in law and fact as now contended for, and honestly believing in and relying upon representations to them by H. C. Privott and others, honestly made, that the lands so conveyed and released to them had to be sold to satisfy the H. C. Privott

note, secured by Privott's deed of trust, represented to be a valid lien upon the land, appeared and bid, and paid to H. C. Privott, for said trustee, the sum of $650 for the lands previously conveyed and released to them by White and Piland.

6. It is agreed that such representations of H. C. Privott and others were honestly made, in the honest belief that said Privott, trustee, had the right, legal and equitable, to sell the land, to convey and release it to plaintiffs, and to pay the said H. C. Privott note.

7. It is agreed that there was due on the H. C. Privott note the sum of $650, and that the land conveyed and released to plaintiffs, as aforesaid, was responsible in that amount, if, upon the facts as herein agreed, it was responsible at all.

8. It is further agreed that, if, upon the foregoing statement of facts, the court should be of the opinion that W. S. Privott, trustee, under his deed of trust and to discharge the H. C. Privott note, had the legal and equitable right to sell, as aforesaid, the lands conveyed and released by White and Piland unto the plaintiffs, and that the plaintiffs, upon their $650 bid, became liable unto said trustee for payment of said sum for the benefit of the H. C. Privott note, then the plaintiffs should recover nothing; otherwise, the plaintiffs are entitled to recover the sum of $650, with interest from 23 April, 1906, and that judgment should be entered for that amount.

His Honor, being of opinion that plaintiffs were entitled to recover, rendered judgment accordingly. Defendants appealed.

*J. H. McMullen, Jr.,* for plaintiffs.
*W. S. Privott* for defendants.

CONNOR, J., after stating the case: Eliminating immaterial matter, the record presents the following case: White sold to

Piland a tract of land for some $3,500. For the purpose of securing the payment of the purchase money, Piland executed to Blount a deed in trust for the land. Thereafter, Piland executed to defendant W. S. Privott a deed in trust on the same land, also a tract belonging to his wife, to secure a note of $650 due defendant H. C. Privott. Both deeds were duly recorded. Subsequent to their execution, Piland sold to plaintiffs a portion of the land for $1,500, which was a full and fair price therefor. Pursuant to an arrangement between White, Piland and the plaintiffs, the purchase money was paid to White on account of his note, and he executed to plaintiffs the release set out in the record. Thereafter, the defendant W. S. Privott, pursuant to the power of sale in the deed in trust executed to him, sold the portion of the land which had not been sold to plaintiffs for the sum of $2,100, which he applied to the payment of the balance due on White's note. He thereupon advertised and sold the portion of said tract conveyed by Piland to plaintiffs for the sum of $650. Plaintiffs, supposing that he had the right to sell, purchased and paid the amount. The question is, To whom does the $650 belong? If, upon these facts, the court be of the opinion that the defendant W. S. Privott was empowered to sell the land, plaintiffs cannot recover; otherwise, they are to have judgment. Defendant W. S. Privott was not a party to the arrangement between White, Piland and plaintiffs, and did not assent thereto. It is conceded that his rights could not be prejudiced by the arrangement between Piland, White and plaintiffs. The real question is whether he could take any benefit therefrom. It is manifest that, as matters stood before Piland sold to plaintiffs, the defendant W. S. Privott's deed in trust was of no value. The proceeds of the land sold to plaintiffs for $1,500, and the remainder, sold for $2,100, were absorbed in paying White's note. It is equally manifest that Privott's power of sale was not affected by the arrangement, unless the admission that the amount paid by plaintiffs

for the portion of the land purchased by them was a full and fair price therefor has the effect of preventing him from selling it under the power contained in his deed. White was entitled to have the proceeds of the sale to plaintiffs applied to his note. It is clear, upon the admissions in the case agreed, that defendants have suffered no prejudice by the sale of the land to plaintiffs. They are in the same position as if Blount, trustee, had sold the land under the power in his deed and applied the proceeds to White's note. If defendant W. S. Privott be permitted to sell the plaintiffs' land and apply the proceeds to H. C. Privott's note, a tract of land conceded to be worth $3,600 is made to pay $4,250 of Piland's debt, and plaintiffs are required to pay $2,150 for land conceded to be worth but $1,500. If, instead of selling under the power in his deed in trust, defendant W. S. Privott had brought suit for foreclosure, having all of the parties before the court, and the facts as set out in the record had, by appropriate pleadings, been brought to the attention of the court, what decree would have been rendered? Plaintiffs insist that, upon payment to White of the $1,500, they became subrogated to the rights of White, and that, *pro tanto,* they were, by substitution, the owners of the White note and entitled to the same security which he held therefor; that, as defendants admit they paid full value for the portion of the land conveyed to them, equity will not permit defendants to sell the land.

It is not very material to the determination of this appeal whether the plaintiffs' equity be to enjoin a sale or, sale having been made, to demand the application of the proceeds to the discharge of the amount paid by them in reduction of White's note. The equity upon which their claim is founded is defined to be "the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt,"   *   *   *   or "that change by which another person is put into the place of a creditor, so that the rights and

securities of the creditor pass to the person who, by being subrogated to him, enters into his right. It is a legal fiction, by force of which an obligation extinguished by a payment by a third person is treated as still subsisting for the benefit of this third person who is thus substituted to the rights, remedies and securities of another. The party who is subrogated is regarded as entitled to the same rights, and, indeed, as constituting one and the same person with the creditor whom he succeeds." Sheldon Sub., 2; 27 Am. and Eng. Enc., 206; *Davidson v. Gregory,* 132 N. C., 389. Subrogation is of equitable origin, not dependent upon contract, and is always invoked to prevent injustice. It will never be permitted to work to the prejudice of the rights of others or produce injustice. Its limitations are well marked and illustrated in numerous cases found in the reports. *Carter v. Jones,* 40 N. C., 196; *Springs v. Harver,* 56 N. C., 96.

Are the plaintiffs, upon the facts set out in the record, entitled to invoke this equity? It is manifest that all parties have acted in good faith, plaintiffs paying full value for the land and applying the purchase money to the first lien. If they had taken an assignment of White's debt *pro tanto* they would have "stood in his shoes" in respect to the security which he held. The rights of the defendants would not have been disturbed. Nothing was taken from them, nor was their security reduced in value.

It would be a manifest hardship to compel the plaintiffs to pay a second time for the land. *Smith, C. J.,* thus disposes of a somewhat analogous case: "The plaintiff occupies the place of the trustee, so far as the mortgagor is concerned, and he has paid the money into the trust fund in the hands of the mortgagees, which, if the purchase were upheld, would go in diminution of the indebtedness, and, if not, must be restored to the plaintiff, and this would be a self-adjustment *pro tanto,* should the plaintiff again become the purchaser." *Gibson v. Barbour,* 100 N. C., 192; *Jones v. Leonard,* 109 N. C., 643.

It appears that it was mutually understood and agreed that the plaintiffs were to take and hold all the right and interest of White and of Piland in the land; that the plaintiffs are colored men, ignorant of their rights in law and fact. Their case comes clearly within the principle announced in *Robinson v. Leavitt,* 7 N. H., 99: "There are cases in which a party who has paid money due upon a mortgage is entitled, for the purpose of effecting the substantial justice of the case, to be substituted in the place of the encumbrance and treated as assignee of the mortgage, and is enabled to hold the land as assignee, notwithstanding the mortgage itself has been cancelled and the debt discharged. The true principle is that when money due upon a mortgage is paid it shall operate as a discharge of the mortgage or in the nature of an assignment of it, as may best serve the purpose of justice and the just intent of the parties. Many cases state the rule in equity to be that the encumbrance shall be kept on foot or considered extinguished or merged, according to the intent or interest of the party paying the money.  *  *  *  And it makes no difference  *  *  *  whether the party, on payment of the money, took an assignment of the mortgage or a release, or whether a discharge was made and the evidence of the debt cancelled. The debt itself may be still held to subsist in him who paid the money, as assignee, so far as it ought to subsist, in the nature of a lien upon the land, and the mortgage be considered in force for his benefit, so far as he ought in justice to hold the land under it, as if it had been actually assigned to him." That a purchaser of mortgaged lands who pays off the prior encumbrance comes within the class of those entitled to subrogation is established by abundant authority. We find in our investigation the exact question presented and decided in *Walker v. King and others,* 45 Vermont, 525. Plaintiff held a mortgage executed by one Cyrus Safford upon land subject to prior mortgages. Safford sold the land to defendants upon the consideration that they would discharge

the prior mortgages.   This being done, the defendants went into possession.   Plaintiff filed his bill for foreclosure of his mortgage.   *Wheeler, J.,* said: "When defendants paid off the first two mortgages and $800 of the third, they, by subrogation, acquired all the rights which the respective mortgagees had by virtue of their mortgages, to the extent to which they paid off the mortgages.   *   *   *   The mortgages, to the extent to which they were paid off by the defendants, constituted a part of their title to the premises, and the orator was always bound to respect those mortgages to that extent. These defendants, as between their vendor and themselves, were not bound to pay the orator's mortgage, but were to have the premises for what they were to pay on the others; and, should they be compelled now to either redeem the orator's mortgage or permit him to redeem the premises upon payment of what they paid at the time of their purchase, without interest, it would be compelling them to pay the amount of his mortgage more than they were to pay for the premises." The principle upon which the plaintiffs' right to recover rests cannot be stated more forcibly or clearly.   Sheldon Sub., sec. 28; *Gans v. Theim,* 93 N. Y., 225.   The equity for subrogation has been applied by us in cases where judicial sales have been vacated for fatal defects, and the purchaser who has paid the purchase money which has been applied to the discharge of debts or liens for which the land was liable has been subrogated to the rights of the creditors whose debts were paid.

The learned counsel for plaintiffs further insists that, independent of the equity for subrogation, when defendant W. S. Privott first sold under his power, the proceeds should have been applied to the debt secured by his deed; that the sale was subject to the deed to Blount, or, in other words, he sold what he had—the equity of redemption.   We concur in this view, as a general rule.   *Bobbitt v. Stanton,* 120 N. C., 253.   It appears, however, that there is a provision in the defendant W. S. Privott's deed in trust requiring him to dis-

charge the White note from the proceeds of the sale of Piland's land before resorting to the tract belonging to his wife.    This takes the case out of the general rule.    We can see no reason why, having applied the $2,100 to the discharge of White's note, defendant trustee is not entitled to sell the other tract in his deed.    Unless there be some reason to the contrary not appearing upon the record, both debts may be paid and the plaintiffs protected.    In other words, equity regarding that as done which ought to be done, the rights of all parties will be preserved and enforced in strict accordance with their original intention and agreement, thus illustrating the wisdom and practical value of those maxims and principles of equity which have been evolved from the labors of the great chancellors who have adorned the equity jurisprudence of England and this country.

We have considered the case upon the facts agreed and the form in which they are submitted to us.    We think that, independent of this agreement, the admission that the plaintiffs were ignorant colored men, not knowing their rights, and being advised by the defendant W. S. Privott, who was honestly mistaken, entitles them to relief.    Equity disregards mere forms and looks at the substance of things.

The judgment must be

Affirmed.