IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-23

No. 18A21

Filed 11 March 2022

M.E.

v.

T.J.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 275 N.C. App. 528 (2020), reversing the ruling entered 7 June 2018 by Judge Anna Worley in the District Court of Wake County, and remanding for further proceedings. Heard in the Supreme Court on 5 January 2022.

> *Scharff Law Firm, PLLC, by Amily McCool; ACLU of North Carolina Legal Foundation, by Irena Como and Kristi L. Graunke; and Patterson Harkavy LLP, by Christopher A. Brook, for plaintiff-appellee.*
>
> *Nelson Mullins Riley & Scarborough LLP, by Lorin J. Lapidus, D. Martin Warf, and G. Gray Wilson, for defendant-appellant.*
>
> *Joshua H. Stein, Attorney General, by Ryan Y. Park, Solicitor General, for State of North Carolina and Governor Roy Cooper, amici curiae.*
>
> *Brooks, Pierce, McLendon, Humphrey, & Leonard, LLP, by Sarah M. Saint and Eric M. David; and Kathleen Lockwood and Nisha Williams, for North Carolina Coalition Against Domestic Violence, amicus curiae.*
>
> *Poyner Spruill LLP, by Andrew H. Erteschik, John Michael Durnovich, N. Cosmo Zinkow; and Robinson, Bradshaw, & Hinton, P.A., by Stephen D. Feldman, Mark A. Hiller, and Garrett A. Steadman, for Legal Aid of North Carolina, The North Carolina Justice Center, and The Pauli Murry LGBTQ+ Bar Association, amici curiae.*

*Womble Bond Dickinson (US) LLP, by Kevin A. Hall, Samuel B. Hartzell, and Ripley Rand, for Former District Court Judges, amicus curiae.*

HUDSON, Justice.

¶ 1   For well over a century, North Carolina courts have abided by the foundational principle that administering equity and justice prohibits the elevation of form over substance. *See, e.g.*, *Currie v. Clark*, 90 N.C. 355, 361 (1884) ("This would be to subordinate substance to form and subserve no useful purpose."); *Moring v. Privott*, 146 N.C. 558, 567 (1908) ("Equity disregards mere form and looks at the substance of things."); *Fidelity & Casualty Co. v. Green*, 200 N.C. 535, 538 (1931) ("To hold otherwise, we apprehend, would be to exalt the form over the substance."). In alignment with this principle, our Rules of Civil Procedure are intended to *facilitate* access to justice, not obstruct it. *See Pyco Supply Co. v. American Centennial Ins. Co.*, 321 N.C. 435, 443 (1988) (noting that "deny[ing] plaintiff its day in court simply for its imprecision with the pen . . . would be contrary to the purpose and intent of . . . the modern rules of civil procedure."). Indeed, "it is the essence of the Rules of Civil Procedure that decisions be had on the merits and not avoided on the basis of mere technicalities." *Mangum v. Surles*, 281 N.C. 91, 99 (1972).

¶ 2   This principle holds particular salience in the realm of Domestic Violence Protective Orders (DVPO). Survivors of domestic violence who turn to courts for protection typically do so shortly after enduring physical or psychological trauma,

and without the assistance of legal counsel. Maria Amelia Calaf, *Breaking the Cycle: Title VII, Domestic Violence, and Workplace Discrimination*, 21 Law & Ineq. 167, 170 (2003) (noting that "the effects [of domestic violence] extend beyond the physical harms, causing substance abuse, severe psychological trauma, and stress-related illnesses."); Julia Kim & Leslie Starsoneck, *North Carolina District Courts' Response to Domestic Violence* 57 (Dec. 2007), https://www.nccourts.gov/assets/inline-files/dv_studyreport.pdf [hereinafter Kim & Starsoneck] (noting that "generally most 50B plaintiffs and defendants appear pro se."). Accordingly, "[t]he procedures under N.C.[G.S.] § 50B-2 are intended to provide a method for trial court judges or magistrates to quickly provide protection from the risk of acts of domestic violence by means of a process which is readily accessible to *pro se* complainants." *Hensey v. Hennessy*, 201 N.C. App. 56, 63 (2009).

¶ 3        Today, we apply these longstanding principles here, where plaintiff struck through and wrote "I do not want to dismiss this action" on a Notice of Voluntary Dismissal form that she had filed thirty-nine minutes previously, after learning that she could, in fact, proceed with her original Chapter 50B DVPO complaint. Defendant contends, *inter alia*, that this handwritten amendment could not revive plaintiff's previously dismissed complaint, and therefore that the trial court erred in exercising jurisdiction over the subsequent hearing. Holding so, however, "would be to exalt the form over the substance." *Fidelity & Casualty Co.*, 200 N.C. at 538.

¶ 4        Accordingly, we hold that the district court did not err in determining that it had subject matter jurisdiction to allow plaintiff to proceed with her Chapter 50B DVPO action. Further, we hold that plaintiff's constitutional argument was properly preserved for appellate review, and that defendant's Rule 19(d) necessary joinder argument was not properly preserved for appellate review. Finally, we note that the merits of the Court of Appeals' ruling that N.C.G.S. § 50-B(1)(b)(6)'s exclusion of complainants in same-sex dating relationships from DVPO protection is unconstitutional were not at issue before this Court, and therefore stand undisturbed and maintain normal precedential effect. We therefore modify and affirm the ruling of the Court of Appeals below reversing the trial court's denial of plaintiff's Chapter 50B complaint.

## I.    Factual and Procedural Background

### A.  Chapter 50B Filings and District Court Rulings

¶ 5        Plaintiff M.E. and defendant T.J., both women, were in a dating relationship that ended badly. After plaintiff ended the relationship on 29 May 2018, she alleged that defendant became verbally and physically threatening toward plaintiff, including attempting to force her way into plaintiff's house and needing to be removed by police. On the morning of 31 May 2018, plaintiff, accompanied by her mother, went to the Wake County Clerk of Superior Court office seeking the protections of a Domestic Violence Protective Order and an ex parte temporary DVPO pursuant to

N.C.G.S. Chapter 50B. After plaintiff explained her situation to staff members at the clerk's office, they provided her with the appropriate forms to file a Chapter 50B "Complaint and Motion for Domestic Violence Protective Order" (AOC-CV-303), which include a section to request a temporary "Ex Parte Domestic Violence Order of Protection." *See* N.C.G.S. § 50B-2(d) (2021) (establishing that "[t]he clerk of superior court of each county shall provide pro se complainants all forms that are necessary or appropriate to enable them to proceed pro se pursuant to this section.").

¶ 6        Plaintiff then filled out the Chapter 50B forms she had been given. Plaintiff checked Box 4 of the form, which alleges that "[t]he defendant has attempted to cause or has intentionally caused me bodily injury; or has placed me or a member of my family or household in fear of imminent serious bodily injury or in fear of continued harassment that rises to such a level as to inflict sustained emotional distress . . ." In the subsequent space for further details, plaintiff wrote:

> May 29th 2016[.] Became aggressive after stating the relationship was over. Had to push her back twice and lock her out of my home then placed 911 call. Officer arrived and she appeared to have left. She was hiding in back yard. Attempted to force entry into the home. 911 was called again. Defendant has not stopped attempting to contact me.

Plaintiff also checked Box 6, indicating that "I believe there is danger of serious and imminent injury to me or my child(ren)." Finally, plaintiff checked Box 9, indicating that "[t]he defendant has firearms and ammunition as described below." Below,

plaintiff wrote "access to father[']s gun collection[.]"

Plaintiff requested "emergency relief" by way of "an Ex Parte Order before notice of a hearing is given to the defendant." Plaintiff further requested that the court order Defendant: "not to assault, threaten, abuse, follow, harass, or interfere with me[;]" "not to come on or about . . . my residence [or] . . . the place where I work[;]" "[to] have no contact with me[;]" "[not] possess[ ] or purchas[e] a firearm[;]" and take "anger management classes." After filing this paperwork, plaintiff was instructed by the staff members to return to court later that day for her hearing.

When plaintiff returned to court for her hearing, the trial court "informed [her] that because both she and [d]efendant were women, and only in a 'dating' . . . relationship, N.C.G.S. § 50B-1(b)(6) did not allow the trial court to grant her an ex parte DVPO or any other protections afforded by Chapter 50B." *M.E.*, 275 N.C. App. at 533. Indeed, N.C.G.S. § 50B-1(a) limits DVPO protection to those who are in or have been in a "personal relationship," and N.C.G.S. § 50B-1(b) subsequently defines "personal relationship" as "a relationship wherein the parties involved:"

> (1) Are current or former spouses;
>
> (2) Are persons *of opposite sex* who live together or have lived together;
>
> (3) Are related as parents and children . . . ;
>
> (4) Have a child in common;
>
> (5) Are current or former household members; [or]

> (6) Are persons *of the opposite sex* who are in a dating
> relationship or have been in a dating relationship.

(emphasis added). As such, the statute excludes from DVPO eligibility any person,
like plaintiff, who is or was in a same-sex dating relationship. Instead of seeking a
DVPO under Chapter 50B, trial court informed plaintiff

> that she could seek a civil ex parte temporary no-contact
> order and a permanent civil no-contact order, pursuant to
> Chapter 50C. *See* N.C.G.S. § 50C-2 (2017). Chapter 50C
> expressly states that its protections are for "persons
> against whom an act of unlawful conduct has been
> committed by another person *not involved in a personal*
> *relationship* with the person *as defined in G.S. 50B-1(b)*."
> N.C.G.S. § 50C-1(8) (2017) (emphasis added).

*M.E.*, 275 N.C. App. at 533. Notably, however, unlike DVPOs under Chapter 50B, no-
contact orders under Chapter 50C do not allow the trial court to place any limits upon
the defendant's right to possess a weapon.

Accordingly, plaintiff returned to the clerk's office and explained to staff
members what the judge had told her. Staff members then gave plaintiff a new stack
of forms to complete, including the Chapter 50C forms and a notice of voluntary
dismissal of her previous Chapter 50B complaint. Plaintiff filled out the forms and
gave them back to the staff members, who filed them. Plaintiff's notice of voluntary
dismissal was filed-stamped 3:12 p.m.

Shortly thereafter, after a conversation among the staff, staff members
informed plaintiff that she could still request a DVPO under Chapter 50B even if the

trial court was going to deny it. Staff members then gave the original file-stamped notice of voluntary dismissal back to plaintiff. Plaintiff struck through the notice and wrote on it: "I strike through this voluntary dismissal. I do not want to dismiss this action[.]" Plaintiff then returned the form to the staff, who wrote "Amended" at the top and refiled it. The amended form was file-stamped a second time at 3:51 p.m., thirty-nine minutes after the original filing.

¶ 11        Plaintiff's four actions (Chapter 50B ex parte DVPO, Chapter 50B permanent DVPO, Chapter 50C ex parte Temporary No-Contact Order for Stalking, and Chapter 50C permanent Temporary No-Contact Order for Stalking) were then heard at the afternoon session of district court that same day, 31 May 2018. Plaintiff was present without counsel at this hearing; defendant was not present. The court had before it the full record of the case, including plaintiff's amended voluntary dismissal form. The court "denied [p]laintiff's request for a Chapter 50B *ex parte* DVPO, but set a hearing date of 7 June 2018 for a hearing on [p]laintiff's request for a permanent DVPO." *M.E.*, 275 N.C. App. at 533. Specifically, the trial court concluded in its order that: "allegations are significant but parties are in same[-]sex relationship and have never lived together, [and] therefore do not have relationship required in statute." The trial court did, however, grant plaintiff's ex parte request pursuant to Chapter 50C by entering a "Temporary No-Contact Order for Stalking or Nonconsensual Sexual Conduct" that same day. *See* N.C.G.S. § 50C-6(a) (2021).

> In the *ex parte* 50C Order, the trial court found as fact that "plaintiff has suffered unlawful conduct by defendant in that:" "On 5/29/18, defendant got physically aggressive and was screaming in plaintiff's face; defendant then left after LEO (law enforcement officers) were called; after LEO left," defendant "attempted to re-enter plaintiff's house; LEO returned to remove defendant from plaintiff's house; since that date, defendant has repeatedly called plaintiff, texted plaintiff from multiple numbers, and contacted plaintiff's friends and family." The trial court found that defendant "continues to harass plaintiff," and that "defendant committed acts of unlawful conduct against plaintiff." The trial court concluded that the "only reason plaintiff is not receiving a 50B DVPO today" is because plaintiff and defendant had been "in a same[-]sex relationship and do not live together," and that N.C.G.S. § 50B-1(b), as plainly written, requires the dating relationship to have consisted of people of the "opposite sex."

*M.E.*, 275 N.C. App. at 534 (cleaned up).

¶ 12    On 7 June 2018, the trial court conducted its subsequent hearing on plaintiff's Chapter 50B and Chapter 50C permanent motions. Plaintiff appeared with counsel at this hearing; defendant appeared pro se. Here again, the trial court enjoyed the benefit of the full case record, including plaintiff's amended voluntary dismissal form. First, regarding the Chapter 50B complaint, "[d]efendant consented to an amendment to the order to indicate her relationship with [p]laintiff was one 'of same sex currently or formerly in dating relationship.' " *Id.* at 535. The trial court then stated: "I do not have a complaint . . . that would survive a Rule 12 motion [to dismiss]" because the plain language of N.C.G.S. § 50B-1(b)(6) does not include same-sex dating relationships within its definition of covered "personal relationships." The

trial court and plaintiff's counsel then engaged in the following exchange:

> [Plaintiff's counsel]: Your honor, with that amended, I understand what you already said, that you don't believe it would survive a motion to dismiss. However, . . . we do feel at this point that [plaintiff] should be allowed to proceed with the Domestic Violence Protective Order, that it's—the statute, that 50B, is unconstitutional as it's written post the same-sex marriage equality case from the Supreme Court in *Obergefell* and that there's no rational basis at this point to have a statute that limits dating relationships to folks of opposite sex. So we would ask that Your Honor consider allowing [plaintiff] to proceed with her Domestic Violence Protective Order case.
>
> [The court]: Do you have any precedent?
>
> [Plaintiff's counsel]: Not in North Carolina.
>
> [The court]: Other than the *Obergefell* case.
>
> [Plaintiff's counsel]: No, Your Honor, not in North Carolina.
>
> [The court]: In anywhere else that has a similar statute?
>
> [Plaintiff's counsel]: Your Honor[,] . . . South Carolina recently just overturned their statute that was written similarly.
>
> [The court]: In what procedure?
>
> [Plaintiff's counsel]: In a Domestic Violence Protective Order procedure.
>
> [The court]: By what court?
>
> [Plaintiff's counsel]: Either their court of appeals or their supreme court. Not by a district court, Your Honor. Yes, I believe it was a court of appeals case.

[The court]: And in checking the legislative history, when was the last time our legislature addressed this?

[Plaintiff's counsel]: Your Honor, our legislature has amended 50B for different reasons, but they have not amended the personal relationship categories any time in the recent past that I can recall. And, your honor, we've explained to [plaintiff], certainly, the bind that the [c]ourt is in in being bound by the language of the statute.

[The court]: Without a more expansive argument on constitutionality, I won't do it. I think there is room for that argument. I think that with some more presentation that maybe we could get there, but I don't think on the simple motion that I'm ready to do that.

[Plaintiff's counsel]: Thank you, Your Honor. Then with the [c]ourt's denial of the plaintiff's 50B action, then we would like to proceed with the 50C.

[The court]: Okay.

¶ 13      In its subsequent form order, the trial court ruled that:

plaintiff has failed to state a claim upon which relief can be granted pursuant to the statute, due to the lack of [a] statutorily defined personal relationship. . . . [H]ad the parties been of opposite genders, those facts would have supported the entry of a Domestic Violence Protective Order (50B).

N.C.G.S. [§] 50B was last amended by the legislature in 2017 without amending the definition of "personal relationship" to include persons of the same sex who are in or have been in a dating relationship. This recent amendment in 2017 was made subsequent to the United States Supreme Court decision in *Obergefell v. Hodges*, 576 U.S. [664,] (2015), and yet the legislature did not amend the definition of personal relationship to include dating

partners of the same sex.

Accordingly, the trial court dismissed plaintiff's Chapter 50B DVPO motion.

¶ 14      Later, the trial court issued a subsequent written order regarding plaintiff's

Chapter 50B DVPO motion. There, the trial court concluded the following:

> 2. The [p]laintiff, through her counsel, argued that she should be allowed to proceed on her request for a [DVPO] because the current North Carolina General Statute 50B-1(b) is unconstitutional after the United States Supreme Court decision in *Obergefell v. Hodges* and that there is no rational basis for denying protection to victims in same-sex dating relationships who are not spouses, ex-spouses, or current or former household members.
>
> 3. North Carolina General Statute 50B was passed by the North Carolina General Assembly in 1979 and later amended on several occasions. It states that an aggrieved party with whom they have a personal relationship may sue for a [DVPO] in order to prevent further acts of domestic violence. The question for the [c]ourt is how a personal relationship is defined. North Carolina General Statute 50B-1 states: "for purposes of this section, the term 'personal relationship' means wherein the parties involved: (1) are current or former spouses; (2) are persons of opposite sex who live together or have lived together; (3) are related as parents and children, including others acting in loco parentis to a minor child, or as grandparents and grandchildren. For purposes of this subdivision, an aggrieved party may not obtain an order of protection against a child or grandchild under the age of 16; (4) have a child in common; (5) are current or former household members; (6) are persons of the opposite sex who are in a dating relationship or have been in a dating relationship."
> . . . .
>
> 4. This definition prohibits victims of domestic violence in same sex dating relationships that are not spouses, ex-

spouses, or current of former household members from seeking relief against a batterer under Chapter 50B.

5. The [c]ourt must consider whether it has jurisdiction to create a cause of action that does not exist and to enter an order under this statute when the statute specifically excludes it. The difficult answer to this question is no, it does not. The General Assembly has the sole authority to pass legislation that allows for the existence of any domestic violence protective order. The legislature has not extended this cause of action to several other important family relationships including siblings, aunts, uncles, "step" relatives, or in-laws.

6. In this context, the [c]ourts only have subject matter jurisdiction and the authority to act and enjoin a defendant when the legislature allows it. On numerous occasions the Court of Appeals has stricken orders entered by the District Court that do no[t] include proper findings of fact or conclusions of law that are necessary to meet the statute. [ ] Defendant must be on notice that a cause of action exists under this section when the act of domestic violence is committed. The [c]ourt cannot enter a [DVPO] against a [d]efendant when there is no statutory basis to do so. In the case before the [c]ourt, the [d]efendant had no such notice.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED as follows:

1. The [p]laintiff has failed to prove grounds for issuance of a [DVPO] as [p]laintiff does not have a required "personal relationship" with the [d]efendant as required by North Carolina General Statute [Chapter] 50B.

The trial court did, however, grant plaintiff's Chapter 50C motion for a No-Contact Order for Stalking or Nonconsensual Sexual Conduct, ordering defendant not to "visit, assault, molest, or otherwise interfere with the plaintiff" for one year

from the date issued, 7 June 2018.

On 29 June 2018, plaintiff appealed the trial court's denial of her DVPO motion to the North Carolina Court of Appeals. In response, defendant sent a letter to plaintiff's counsel and the trial court that: denied that she and plaintiff were in a dating relationship; requested that the Court of Appeals not hear the case; asserted that "the LGBT community is asking for special treatment[ ] in this proceeding" and that "[t]hey should not be given equal access to protection under law as heterosexual relationships[;]" and emphasized that she did not want to be involved in the appeal.

**B. Court of Appeals**

Before the Court of Appeals, plaintiff argued "that the trial court's denial of her request for a DVPO violated [her] constitutional rights protected by the Due Process and Equal Protection Clauses of the Fourteenth Amendment [of the United States Constitution], as well as the associated provisions of the North Carolina Constitution." *M.E.*, 275 N.C. App. at 538.

The Court of Appeals also allowed several parties to file *amicus curiae* briefs in favor of the plaintiff. These amici included the Attorney General of North Carolina, who submitted a brief on behalf of the State seeking "to vindicate the State's powerful interests in safeguarding all members of the public from domestic violence." *Id.*

Defendant did not file an appellate brief, and no *amici* sought to file briefs contesting plaintiff's arguments on appeal.

> There were also no motions filed by any entity of the State to submit an *amicus* brief, or otherwise intervene in th[e] action, for the purpose of arguing in favor of the constitutionality of the Act. Therefore, [the Court of Appeals], on its own motion and by order entered 3 May 2019, appointed an *amicus curiae* ("*Amicus*"), to brief an argument in response to [p]laintiff's arguments on appeal.

*Id.*

On 31 December 2020, the Court of Appeals filed an opinion in which it agreed with plaintiff's claims under both the North Carolina and United States constitutions. Accordingly, the Court of Appeals reversed the trial court's denial of Plaintiff's complaint for a Chapter 50B DVPO and remanded for entry of an appropriate order. *Id.* at 590. Further, the court explicitly stated that its holding applied with equal force "to all those similarly situated with Plaintiff who are seeking a DVPO pursuant to Chapter 50B; that is, the 'same-sex' or 'opposite sex' nature of their "dating relationship" shall not be a factor in the decision to grant or deny a petitioner's DVPO claim under the Act." *Id.*

Judge Tyson dissented. *Id.* Specifically, the dissent would have held that plaintiff's appeal was not properly before the court because of five purported jurisdictional and procedural defects: (1) plaintiff's filing of a voluntary dismissal of her 50B complaint; (2) plaintiff's failure to subsequently file a post-dismissal Rule 60 motion; (3) plaintiff's failure to argue and preserve any constitutional issue for appellate review; (4) plaintiff's failure to join necessary parties; and (5) plaintiff's

failure to comply with Rule 3 to invoke appellate review. *Id.* (Tyson, J., dissenting). Additionally, the dissent asserted that the majority's dismissal of the arguments of the appointed *amicus curiae* regarding the trial court's jurisdiction was erroneous.

¶ 22        First, the dissent asserted that plaintiff's filing of her voluntary dismissal of her previous 50B complaint extinguished the trial court's jurisdiction over that action. *Id.* at 591–92 (Tyson, J., dissenting). The dissent would have held that plaintiff's informal nullification of the voluntary dismissal did not properly revive her claim—she instead should have re-invoked the district court's jurisdiction with a new complaint. *Id.* at 592 (Tyson, J., dissenting).

¶ 23        Second, and as an alternative to filing a new complaint, the dissent asserted that plaintiff should have filed a Rule 60(b) motion to seek to revive the dismissed complaint. *Id.* (Tyson, J., dissenting). Without a refiling or a 60(b) motion, the dissent contended, plaintiff's complaint was extinguished by her voluntary dismissal. *Id.* at 593 (Tyson, J., dissenting).

¶ 24        Third, the dissent asserted that plaintiff did not properly preserve her constitutional argument for appellate review. *Id.* at 593–94 (Tyson, J., dissenting). The dissent would have instead held that plaintiff counsel's reference to *Obergefell* did not adequately raise a constitutional question, and, in any event, the trial court did not rule on the act's constitutionality, so that plaintiff may not now argue on appeal that the Act is unconstitutional. *Id.* at 594 (Tyson, J., dissenting).

¶ 25        Fourth, the dissent would have held that, because this is a civil action challenging the validity of a North Carolina statute, the Speaker of the House of Representatives and the President Pro Tempore of the Senate must be joined as defendants under Rule 19(d) of the North Carolina Rules of Civil Procedure. *Id.* at 595 (Tyson, J., dissenting). Separate from and in addition to the trial court's lack of subject matter jurisdiction, then, the dissent asserted that no further action or review is proper until this statutory defect is cured. *Id.* (Tyson, J., dissenting).

¶ 26        Fifth, the dissent noted that plaintiff's trial counsel's hard copy of the notice of appeal was filed with the clerk of superior court and bore no manuscript signature. *Id.* at 596 (Tyson, J., dissenting). Accordingly, the dissent asserted, the notice of appeal is defective under N.C. R. App. P. 3(d), which requires that a notice of appeal be signed by the counsel of record. *Id.* (Tyson, J., dissenting).

¶ 27        Finally, the dissent took issue with the majority's failure to review and dismissal of the arguments regarding subject matter jurisdiction raised by the appointed *amicus curiae*. *Id.* at 597 (Tyson, J., dissenting). The dissent asserted that amicus' supplemental filing and motion to dismiss for lack of jurisdiction were vital and should have been included in the record on appeal. *Id.* at 597–99 (Tyson, J., dissenting).

¶ 28 In sum, the dissent would have held that no appeal was actually pending before the court due to the trial court's lack of jurisdiction, among other procedural defects. *Id.* at 599–600 (Tyson, J., dissenting).

**C. Present Appeal**

¶ 29 On 11 January 2021, defendant, now represented by the former court-appointed *amicus* counsel, filed a notice of appeal in this Court based on the Court of Appeals dissent.

¶ 30 First, defendant asserts that the trial court and the Court of Appeals lacked proper jurisdiction due to plaintiff's voluntary dismissal of the Chapter 50B complaint and plaintiff's failure to include the dismissal in the record on appeal, on the basis that plaintiff's Chapter 50B DVPO complaint was completely extinguished upon the filing of the notice of voluntary dismissal at 3:12 p.m. on 31 May 2018. Accordingly, defendant asserts, because plaintiff never formally filed a new Chapter 50B complaint and no request for Rule 60(b) relief was sought or granted by the trial court, "the action was rendered moot and the [trial] court was divested of subject matter jurisdiction to proceed with the merits disposition." Defendant further contends that because the trial court lacked subject matter jurisdiction on the Chapter 50B action, its subsequent order on the action was void *ab initio*.

¶ 31 Correspondingly, defendant asserts that when plaintiff did not include the notice of voluntary dismissal form in her record on appeal, she "failed to meet her

burden of establishing jurisdiction of the [trial] court and Court of Appeals by omitting a court paper essential to the determination of whether such jurisdiction existed." Independent of this omission, though, defendant contends that the Court of Appeals had a duty to evaluate its own appellate jurisdiction over plaintiff's purported appeal before proceeding to a disposition on the merits. Defendant argues that "by deciding an appeal with a blind eye towards" a missing jurisdictional document, the [Court of Appeals] majority failed to carry out its duty to properly examine [its own] jurisdiction."

¶ 32      Second, defendant asserts that plaintiff failed to specifically preserve the constitutional issue for review by the Court of Appeals pursuant to Rule 10(a) of the North Carolina Rules of Appellate Procedure, or to obtain a ruling from the trial court on the issue upon the party's request, objection, or motion." Here, defendant contends, plaintiff's "vague constitutional reference" did not properly specify the grounds of her objection, and the trial court "confined its ruling to non[-]constitutional grounds." Accordingly, defendant asserts, the Court of Appeals erred in considering plaintiff's constitutional argument.

¶ 33      Third, defendant contends that the Court of Appeals ruling must be vacated and remanded for the mandatory joinder of the North Carolina General Assembly under Rule 19(d) of the North Carolina Rules of Civil Procedure. Defendant notes that Rule 19(d) requires that

> [t]he Speaker of the House of Representatives and the
> President Pro Tempore of the Senate, as agents of the State
> through the General Assembly, must be joined as
> defendants in any civil action challenging the validity of a
> North Carolina Statute or provision of the North Carolina
> Constitution under State or federal law.

Echoing the reasoning first raised in the Court of Appeals dissent, defendant
contends that "[b]ecause plaintiff has challenged the constitutionality of N.C.G.S. §
50B-1(b)(6), the President *Pro Tempore* of the Senate and the Speaker of the House
of Representatives are necessary parties and '*must be joined as defendants*' in the
civil action." "Consequently," defendant argues, "no disposition on appeal or before
the [trial] court can occur until mandatory joinder is completed as provided by
statute."

¶ 34        In response, plaintiff first argues that the trial court had proper jurisdiction to
hear her DVPO complaint and motions where, at the suggestion of court staff, she
quickly withdrew a notice of voluntary dismissal filed mistakenly or inadvertently
because she wished to continue prosecuting her case. Plaintiff claims that defendant
waived her objection regarding the notice of voluntary dismissal when she failed to
raise it in the trial court or the Court of Appeals. In any event, plaintiff contends, the
trial court had authority and discretion to construe plaintiff's filings in her favor and
permit amendment as needed to promote justice where plaintiff was proceeding pro
se in a domestic violence action. To prevent injustice and inefficiency, plaintiff
asserts, "trial courts have discretion to take steps to protect litigants poised to

relinquish their cases, particularly where those litigants are vulnerable."

¶ 35        Further, plaintiff asserts, the trial court had inherent authority to grant plaintiff relief under Rule 60(b) in the interest of justice. Although plaintiff's amended notice of dismissal was not styled as a formal 60(b) motion, plaintiff contends that it was "nonetheless sufficient for the trial court to award her equitable relief from the unintended dismissal under" that rule because it met the substantive requirements of that rule, namely that it was filed inadvertently or mistakenly, and was quickly fixed.

¶ 36        Second, plaintiff addresses defendant's preservation argument. As an initial matter, plaintiff again argues that by failing to raise objections to constitutional preservation below, defendant waived those objections. Indeed, plaintiff notes, in Defendant's lone submission during the appellate process (the letter to the trial court after its ruling), defendant herself briefly engaged in the constitutional merits without objecting to preservation. But even if defendant has not waived her preservation challenge, plaintiff argues, the constitutional issue was properly preserved. Specifically, plaintiff contends that the record makes clear that the trial court had notice of the constitutional issue before it and ruled on it, which is sufficient to preserve it for appeal. Plaintiff agues that her counsel expressly preserved the constitutional issue by mentioning *Obergefell* by name, arguing that the statute was unconstitutional because there was no rational basis supporting the exclusion of

same-sex couples, and noting a recent South Carolina Supreme Court case raising the same constitutional issues. Further, plaintiff asserts, the trial court ruled on the constitutional issue where it expressly engaged with the issue both on the record during oral argument and in its final written order before denying the DVPO motion.

¶ 37        Third and finally, plaintiff addresses defendant's joinder challenge, arguing first that Defendant waived her joinder defense where she failed to raise it in either the trial court or the Court of Appeals. Even if defendant has not waived her objection to joinder, though, plaintiff argues that joining legislative leaders is not required here because actions under Chapter 50B are not "civil actions challenging the validity of a North Carolina statute" under Rule 19(d). Rather, plaintiff asserts that her Chapter 50B complaint was brought for the sole purpose of obtaining a DVPO, and the as-applied constitutional question was raised merely in defense of the trial court's statutory jurisdiction to hear the claim of a person in a same-sex dating relationship.

¶ 38        Finally, this Court allowed several *amici* to file briefs, including: (1) North Carolina Solicitor General Ryan Park, on behalf of the State; (2) the North Carolina Coalition Against Domestic Violence; (3) Legal Aid of North Carolina, the North Carolina Justice Center, and the Pauli Murray LGBTQ+ Bar Association; and (4) ten former North Carolina District Court judges. All *amicus* briefs filed supported the ruling of the Court of Appeals and plaintiff's positions on appeal.

## II.   Analysis

¶ 39        We now consider each of defendant's claims before this Court. As conclusions of law, each of the issues raised by defendant "are reviewed de novo and are subject to full review." *State v. Biber*, 365 N.C. 162, 168 (2011).

¶ 40        First, we conclude that the trial court acted within its broad discretion in exercising jurisdiction over plaintiff's Chapter 50B complaint because plaintiff's amended notice of dismissal functionally served as a motion for equitable relief under Rule 60(b), and plaintiff's amendment to the complaint—which defendant consented to—functionally served as a refiling. Second, we hold that plaintiff properly preserved the constitutional issue for appellate review. Third, we conclude that defendant did not properly preserve her joinder argument because it was first raised by the Court of Appeals dissent without being argued before that court. Accordingly, we modify and affirm the ruling of the Court of Appeals below reversing the trial court's denial of plaintiff's Chapter 50B complaint.

### A. Jurisdiction

¶ 41        First, defendant asserts that the trial court and the Court of Appeals lacked jurisdiction due to plaintiff's voluntary dismissal of the Chapter 50B complaint and plaintiff's failure to include the dismissal in the record on appeal. We disagree.

¶ 42        Generally, trial court judges enjoy broad discretion in the efficient administration of justice and in the application of procedural rules toward that goal.

*See Miller v. Greenwood*, 218 N.C. 146, 150 (1940) ("It is within [a judge's] discretion to take any action [toward ensuring a fair and impartial trial] within the law and so long as he [or she] does not impinge upon [statutory] restrictions.") Indeed,

> [i]t is impractical and would be almost impossible to have legislation or rules governing all questions that may arise on the trial of a case. Unexpected developments, especially in the field of procedure, frequently occur. When there is no statutory provision or well recognized rule applicable, the presiding judge is empowered to exercise his [or her] discretion in the interest of efficiency, practicality, and justice.

*Shute v. Fisher*, 270 N.C. 247, 253 (1967).

¶ 43 Accordingly, rather than erecting hurdles to the administration of justice, "[t]he Rules of Civil Procedure [reflect] a policy to resolve controversies on the merits rather than on technicalities of pleadings." *Quackenbush v. Groat*, 271 N.C. App. 249, 253 (2020) (cleaned up).

> A suit at law is not a children's game, but a serious effort on the part of adult human beings to administer justice; and the purpose of process is to bring parties into court. If [procedural filings use] such terms that every intelligent person understands [what] is meant, it has fulfilled its purpose; and courts should not put themselves in the position of failing to recognize what is apparent to everyone else.

*Harris v. Maready*, 311 N.C. 536, 544 (1984) (cleaned up).

¶ 44 These general principles are particularly important within the context of DVPOs. In fact, the remedies of N.C.G.S. Chapter 50B are specifically written with

ease of access for pro se complainants in mind. For instance, N.C.G.S. § 50B-2(a) notes that "[a]ny aggrieved party entitled to relief under this Chapter may file a civil action and proceed pro se, without the assistance of legal counsel." Further, subsection (d) of that statute is dedicated entirely to establishing procedures for "Pro se Forms[:]"

> The clerk of superior court of each county shall provide to pro se complainants all forms that are necessary or appropriate to enable them to proceed pro se pursuant to this section. The clerk shall, whenever feasible, provide a private area for complainants to fill out forms and make inquiries. The clerk shall provide a supply of pro se forms to authorized magistrates who shall make the forms available to complainants seeking relief under . . . this section.

N.C.G.S. § 50B-2(d).

This statutory emphasis recognizes and accounts for the factual reality of domestic violence adjudication: survivors of domestic violence who turn to courts for protection typically do so shortly after enduring physical or psychological trauma, and without the assistance of legal counsel. Calaf, 21 Law & Ineq. at 170; Kim & Starsoneck at 57. As such, "[t]he procedures under N.C.[G.S.] § 50B-2 are intended to provide a method for trial court judges or magistrates to quickly provide protection from the risk of acts of domestic violence by means of a process which is readily accessible to *pro se* complainants." *Hensey*, 201 N.C. App. at 63.

Rule 60 of the North Carolina Rules of Civil Procedure provides trial courts with a procedure through which they can provide equitable relief from various

judgments, orders, or proceedings. N.C.G.S. § 1A-1, R. 60. Specifically, Rule 60(b) establishes that "[o]n motion and upon such terms as are just, the court may relieve a party or [her] legal representative from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect." *Id.*

¶ 47      Here, the trial court acted well within its broad discretion, and with the benefit of the full record before it, when exercised jurisdiction over plaintiff's Chapter 50B DVPO complaint. Specifically, plaintiff's amended notice of voluntary dismissal—in which she struck through and handwrote "I do not want to dismiss this action" on the form she had inadvertently or mistakenly filed thirty-nine minutes previously—served as functional Rule 60(b) motion through which the trial court could, and did, grant equitable relief. There is plainly no doubt as to plaintiff's intentions as expressed through the amended form: she "d[id] not want to dismiss th[e] action." Likewise, when the trial court allowed plaintiff to amend her Chapter 50B complaint—without objection from defendant—at the 7 June hearing on the merits, it reasonably could have considered this amendment as, in essence, a refiling after a voluntary dismissal.[1] While it may have been preferable for plaintiff to have filed an official 60(b) motion or a new Chapter 50B complaint for formality's sake, her amendment nevertheless expressed her intention to proceed with the complaint "in

---

[1] In light of defendant's consent to this amendment, there can be no doubt that she had ample notice that plaintiff was pursuing a DVPO under Chapter 50B.

such terms that every intelligent person understands [what] is meant, [and therefore] has fulfilled its purpose; and courts should not put themselves in the position of failing to recognize what is apparent to everyone else." *Harris*, 311 N.C. at 544. Indeed, "[t]o hold otherwise . . . would be to exalt the form over the substance." *Fidelity & Casualty Co.*, 200 N.C. at 538.

¶ 48          Plaintiff here is exactly the type of complainant that the *pro se* provisions of Chapter 50B contemplate: one who is navigating the complex arena of legal procedure for the first time, without the assistance of legal counsel, soon after experiencing significant trauma. At every turn on 31 May 2018, plaintiff diligently followed the direction of court staff: in filing her initial Chapter 50B forms that morning, in completing the stack of new forms including the notice of voluntary dismissal at 3:12 p.m., and in amending and refiling that form thirty-nine minutes later to express her intention to proceed with her complaint. When the trial court exercised jurisdiction over plaintiff's Chapter 50B complaint, it did so with the benefit of the full record before it, including the court file (the trial court noted it was entering an order denying the DVPO "after hearing from the parties and reviewing the file") which held the amended notice of voluntary dismissal. It was squarely within the discretion of the trial court to understand the plain intent of plaintiff's amended notice of voluntary dismissal as a Rule 60(b) motion for equitable relief or her amended Chapter 50B complaint as a functional refiling, and to subsequently exercise its

jurisdiction. To be clear, this is not to say that plaintiff, acting without legal counsel in the harried setting of the clerk's office, intended for her amendment to the voluntary dismissal form to serve as a formal 60(b) motion, or that she or her counsel intended for the Chapter 50B complaint amendment at the 7 June hearing to serve as a formal refiling. They likely did not. Rather, we hold that it was within the trial court's broad discretion—with the benefit of the full record before it—to *treat* these two amendments as a functional 60(b) motion or refiling in light of the plaintiff's plain intention to move forward with her Chapter 50B complaint.[2] While we cannot know precisely from the record whether the trial court considered these procedures when it determined that it had jurisdiction, its decision to exercise jurisdiction itself evidences that the court understood plaintiff's plain intention to proceed. It is not the job of this Court to second-guess the trial court's determination of its own jurisdiction when that determination was supported by competent evidence and practical common sense. Accordingly, the trial court did not err in exercising jurisdiction, and the Court of Appeals did not err in its subsequent review.

**B. Preservation**

Second, defendant asserts that plaintiff failed to preserve the constitutional

---

[2] While the dissent warns that this understanding of the trial court's discretion "will disrupt the orderly flow of cases through our trial courts[,]" the facts here prove the opposite: it ensures that common sense and the smooth functioning of vital remedial procedures, like those protecting survivors of domestic violence, will not be thwarted by overly technical scrutiny of that discretion.

issue for appeal. Again, we disagree.

¶ 50        Rule 10(a)(1) of the North Carolina Rules of Appellate Procedure establishes

that

> [i]n order to preserve an issue for appellate review, a party
> must have presented to the trial court a timely request,
> objection, or motion, stating the specific grounds for the
> ruling the party desired the court to make if the specific
> grounds were not apparent from the context. It is also
> necessary for the complaining party to obtain a ruling upon
> the party's request, objection, or motion. Any such issue
> that was properly preserved for review by action of counsel
> taken during the course of proceedings in the trial tribunal
> by objection noted . . . may be made the basis of an issue
> presented on appeal.

Put differently, Rule 10(a)(1) creates two distinct requirements for issues

preservation: (1) a timely objection clearly (by specific language or by context) raising

the issue; and (2) a ruling on that issue by the trial court. These requirements are

grounded in judicial efficiency; they "prevent[ ] unnecessary retrials by calling

possible error to the attention of the trial court so that the presiding judge may take

corrective action if it is required." *State v. Bursell*, 372 N.C. 196, 199 (2019).

"Practically speaking, Rule 10(a)(1) contextualizes the objection for review on appeal,

thereby enabling the appellate court to identify and thoroughly consider the specific

legal question raised by the objecting party." *Id.*

¶ 51        Notably, Rule 10(a)(1) does not require a party to recite certain magic words in

order to preserve an issue; rather, it creates a functional requirement of bringing the

trial court's attention to the issue such that the court may rule on it. *See State v. Garcia*, 358 N.C. 382, 410 (2004) (noting that because an issue was not raised at trial, "the trial court was denied the opportunity to consider, and, if necessary, to correct the error.") For instance, in *State v. Murphy*, this Court determined that "[a]lthough the issue of defendant's invocation of his right to remain silent was not clearly and directly presented to the trial court, . . . the defendant's theory was implicitly presented to the trial court and thus [was properly preserved for appellate review]." 342 N.C. 813, 822 (1996). Contrastingly, in cases where this Court has determined that an issue was *not* properly preserved, the records tend to include no reference to the issue at trial. *See, e.g.*, *Bursell*, 372 N.C. at 200 (noting "the absence of any reference to the Fourth Amendment, *Grady*[,] or other relevant SBM case law, privacy, or reasonableness"); *Garcia*, 358 N.C. at 410 (noting that "defendant did not raise this constitutional issue at trial."); *State v. McKenzie*, 292 N.C. 170, 176 (1997) (noting that because "[n]o argument was made in the trial court on that issue . . . the trial court was wholly unaware" of the issue.).

¶ 52        Regarding the second requirement of Rule 10(a)(1), this Court has observed that appellate courts "will not pass upon a constitutional question unless it affirmatively appears that such question was raised and passed upon in the court below." *State v. Jones*, 242 N.C. 563, 564 (1955). For instance, in *State v. Dorsett*, this Court declined to consider a constitutional issue after the trial court "expressly

declined to rule on th[e] question." 272 N.C. 227, 229 (1967).

¶ 53        Here, plaintiff properly raised and received a ruling on her claim that it would be unconstitutional to deny relief under N.C.G.S. Chapter 50B because she was in a same-sex dating relationship. Thus, the question of whether DVPO protection could be denied to those in same-sex dating relationships was properly preserved for appeal. First, there can be no doubt that plaintiff's counsel properly raised the issue during the hearing. Specifically, plaintiff's counsel asserted that "[Chapter] 50B[ ] is unconstitutional as it's written post the same-sex marriage equality case in *Obergefell* and . . . there's no rational basis at this point to have a statute that limits dating relationships to folks of opposite sex." In this statement, plaintiff's counsel expressly: (1) asserted that the judge's application of the statute in question was unconstitutional; (2) cited by name the landmark United States Supreme Court ruling on the unconstitutionality of same-sex marriage prohibitions under the Fourteenth Amendment, *see Obergefell v. Hodges*, 576 U.S. 644 (2015); and (3) recited a specific legal standard associated with judicial analysis under that amendment. Contrary to the claim of the dissenting opinion below that plaintiff's counsel's statement was merely a "cryptic reference to *Obergefell*[,]" we understand it to clearly and explicitly challenge the constitutionality of the application of the statute in question under well-established Due Process and Equal Protection doctrines.

¶ 54        Next, when asked by the trial court if any other jurisdictions have struck down

similar DVPO restrictions, plaintiff's counsel noted a recent case in which the South Carolina Supreme Court, citing *Obergefell*, ruled that the sections of their state's DVPO statute that excluded people in same-sex relationships from protection were unconstitutional under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the U.S. Constitution. *Doe v. State*, 421 S.C. 490, 495–96, 507 n.12 (2017).

¶ 55 Finally, the trial court's subsequent written order explicitly acknowledged that plaintiff had raised this constitutional issue, noting that

> [p]laintiff, through her counsel, argued that she should be allowed to proceed on her request for a [DVPO] because the current [N.C.G.S. §] 50B-1(b) is unconstitutional after the United States Supreme Court decision in *Obergefell v. Hodges* and that there is no rational basis for denying protection to victims in same-sex dating relationships . . . .

Accordingly, plaintiff clearly raised her constitutional argument at trial, thus satisfying the first requirement for issue preservation under Rule 10(a)(1).

¶ 56 Second, the record makes clear that the trial court sufficiently ruled on the constitutional issue, thus satisfying the second requirement for issue preservation under Rule 10(a)(1). Specifically, the trial court "passed upon" this issue in three distinct places: (1) during the hearing; (2) in its subsequent form order; and (3) in its subsequent written order.

¶ 57 First, the trial court ruled upon plaintiff's constitutional argument during the hearing. In response to plaintiff's counsel's request "that Your Honor consider

allowing [plaintiff] to proceed with her [DVPO] case" in light of the constitutional argument, the trial court stated: "Without a more expansive argument on constitutionality, I won't do it. I think there is room for that argument. I think that with some more presentation that maybe we could get there, but I don't think on the simple motion I'm ready to do that." Plainly, this exchange constitutes the trial court making a determination, or "passing upon," plaintiff's argument.

¶ 58        Second, the trial court ruled upon plaintiff's constitutional argument within its subsequent form order denying plaintiff's DVPO motion. Specifically, after noting that "had the parties been of opposite genders, th[e]se facts would have supported the entry of a [DVPO,]" the trial court observed that the General Assembly's 2017 amendment to Chapter 50B "was made subsequent to the United Statutes Supreme Court decision in *Obergefell v. Hodges*, 567 U.S. [644,] (2015), and yet the legislature did not amend the definition of personal relationship to include dating partners of the same sex." Again, this statement indicates the trial court's rejection of, and thus ruling upon, plaintiff's constitutional argument in light of legislative intent.

¶ 59        Third, the trial court ruled upon plaintiff's constitutional argument within its subsequent written order. Specifically, after summarizing plaintiff's constitutional argument and noting Chapter 50B's legislative history and exclusion of same-sex dating relationships from DVPO protection, the trial court stated:

> 5. The [c]ourt must consider whether it has jurisdiction to create a cause of action that does not exist and to enter an

> order under this statute when the statute specifically excludes it. The difficult answer to this question is no, it does not. The General Assembly has the sole authority to pass legislation that allows for the existence of any [DVPO]. The legislature has not extended this cause of action to several other important family relationships including siblings, aunts, uncles, "step" relatives, or in-laws.
>
> 6. In this context, the [c]ourts only have subject matter jurisdiction and the authority to act and enjoin a defendant when the legislature allows it. . . .

As above, this statement indicates the trial court's rejection of plaintiff's constitutional argument on the grounds of legislative intent.

¶ 60        Finally, it is also worth noting that in her only submission in this case from the trial court's initial ruling to her notice of appeal to this Court, defendant directly engaged in the constitutional issue raised by plaintiff at trial. Specifically, defendant asserted "that the LGBT community is asking for special treatment[ ] in this proceeding . . . [and] should not be given equal access to protection under law as heterosexual relationships." This direct engagement by defendant in the constitutional issue further indicates that the issue was properly preserved for appellate review.

¶ 61        Accordingly, plaintiff's argument regarding the constitutionality of Chapter 50B as applied to DVPO complainants in same-sex dating relationships was properly preserved for appellate review. We therefore hold that the Court of Appeals did not err in determining the same.

**C. Joinder**

Third, defendant contends that the Court of Appeals ruling must be vacated and remanded for the mandatory joinder of the North Carolina General Assembly under Rule 19(d) of the North Carolina Rules of Civil Procedure. Because this argument was not raised by defendant below and was first raised by the Court of Appeals dissent, though, it is not properly before this Court, and we therefore decline to consider it. In any event, even assuming *arguendo* that mandatory joinder under Rule 19(d) need not be raised below in order to be considered here, joining the legislative leaders is not required here.

"This Court has long held that issues and theories of a case not raised below will not be considered on appeal . . . ." *Westminster Homes, Inc. v. Town of Cary Zoning Bd. of Adjustment*, 354 N.C. 298, 309 (2001); *see, e.g.*, *Smith v. Bonney*, 215 N.C. 183, 184–85 (1939) (noting that "[t]o sustain the assignments of error would be to allow the appellant to try the case in the Superior Court upon one theory and to have the Supreme Court to hear it upon a different theory."). Indeed, when "[a]n examination of the record discloses that the cause was not tried upon that theory [below], . . . the law does not permit parties to swap horses between courts in order to get a better mount in the Supreme Court." *Weil v. Herring*, 207 N.C. 6, 10 (1934).

Rule 19(d) of the North Carolina Rules of Civil Procedure establishes that "[t]he Speaker of the House of Representatives and the President Pro Tempore of the

Senate, as agents of the State through the General Assembly, must be joined as defendants in any civil action challenging the validity of a North Carolina statute or provision of the North Carolina Constitution under State or federal law." This Rule, however, must be read in harmony with its preceding Rules. Specifically, Rule 12(h)(2) establishes that "a defense of failure to join a necessary party . . . may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits." Further, "[a]lthough a defense of lack of subject matter jurisdiction may not be waived and may be asserted for the first time on appeal[,] a failure to join a necessary party does not result in a lack of jurisdiction over the subject matter of the proceeding." *Stancil v. Bruce Stancil Refrigeration, Inc.*, 81 N.C. App. 567, 574 (1986) (citing Wright & Miller, *Fed. Practice and Procedure: Civil* § 1392 (1969)), *disc. review denied*, 318 N.C. 418, (1986). Accordingly, and in alignment with our well-established prohibition of raising new issues on appeal, "[t]he defense of failure to join a necessary party must be raised before the trial court and may not be raised for the first time on appeal." *Phillips v. Orange County Health Dept.*, 237 N.C. App. 249, 255 (2017).

¶ 65    Here, defendant did not raise the issue of necessary joinder of the legislature under Rule 19(d) before the trial court. Further, neither defendant nor the appointed *amicus* counsel raised this issue before the Court of Appeals. Indeed, the first time that this issue was raised in this case was by the dissenting opinion below. *See M.E.*,

275 N.C. App. at 595 (Tyson, J., dissenting). Specifically, the Court of Appeals dissent cites this Court's ruling in *Booker v. Everhart*, 294 N.C. 146, 158 (1978), for the proposition that "neither the district court, nor [the Court of Appeals], can address the underlying merits of [p]laintiff's assertions until this mandatory joinder defect is cured." *M.E.*, 275 N.C. App. at 595 (Tyson, J., dissenting). In *Booker*, however, the defendants directly raised their necessary joinder issue before the trial court by making a motion to dismiss under Rule 12(b)(7). *Booker*, 294 N.C. at 149. Here, contrastingly, the necessary joinder issue was raised neither by defendant nor by the trial court *ex meru motu* and was not mentioned until the Court of Appeals dissent. Accordingly, this issue is not properly before this Court, and we therefore decline to consider it. To the extent that *Booker* suggests that an *appellate* court must correct a necessary joinder defect *ex meru motu* before a ruling on the merits, it is overruled.

¶ 66        In any event, even assuming *arguendo* that mandatory joinder under Rule 19(d) may be raised for the first time on appeal, joining the legislative leaders is not required here because plaintiff's arguments do not fall within the purview of Rule 19(d). Rule 19(d) establishes that legislative leaders "must be joined as defendants in any civil action challenging the validity of a North Carolina statute or provision of the North Carolina Constitution under State or federal law." Here, contrastingly, plaintiff's complaint was brought under N.C.G.S. Chapter 50B for the sole purpose of obtaining a DVPO through a judicial proceeding under that chapter, not as an action

challenging the facial validity of that statute. Although plaintiff asserted an as-applied constitutional defense in order to prevent the dismissal of her action, this alone does not convert her action seeking a DVPO into a "civil action challenging the validity of a North Carolina statute."

¶ 67 Accordingly, even if defendant's Rule 19(d) joinder argument could be raised for the first time on this appeal, it is meritless within the context of the present case.

### III. Court of Appeals' Constitutional Ruling Undisturbed

¶ 68 Finally, we note that defendant has not challenged the Court of Appeals' substantive ruling on the merits of the constitutional issue. Accordingly, we do not address the Court of Appeals' ruling that Chapter 50B's exclusion of complainants in same-sex relationships from DVPO protection is unconstitutional as applied to plaintiff and those similarly situated, and this portion of the holding stands undisturbed.

### IV. Conclusion

¶ 69 As explained above, we hold that the trial court acted within its broad discretion in exercising its jurisdiction over plaintiff's Chapter 50B DVPO complaint where plaintiff's amended form served as a functional Rule 60(b) motion for equitable relief from her mistaken or inadvertent dismissal filed thirty-nine minutes previously, and the Court of Appeals did not err in determining the same. Further, we hold that plaintiff's constitutional argument was properly preserved for appellate

review under Rule 10(a)(1). Next, we hold that defendant's Rule 19(d) necessary joinder argument is not properly before this Court, and in any event is meritless as intervention of legislative leaders, though optional, was not mandatory in the context of plaintiff's Chapter 50B complaint. Finally, we note that because the Court of Appeals' substantive constitutional ruling was not at issue before this court, its decision on this issue remains undisturbed.

MODIFIED AND AFFIRMED.

Justice BERGER dissenting.

The Rules of Civil Procedure "govern the procedure in the superior and district courts of the State of North Carolina in all actions and proceedings of a civil nature except when a differing procedure is prescribed by statute." N.C.G.S. § 1A-1, Rule 1 (2021). These rules exist to provide order and certainty for all parties involved in civil litigation. There is a predictable outcome for this case if the Rules of Civil Procedure are respected. However, because the majority fails to adhere to these basic rules, and because the majority's newly crafted "mistaken or inadvertent dismissal" rule cannot be found in the Rules of Civil Procedure, I respectfully dissent.

A complaint seeking entry of a domestic violence protective order pursuant to Chapter 50B is a civil action. N.C.G.S. § 50B-2(a) (2021). "A civil action is commenced by filing a complaint with the court." N.C.G.S. § 1A-1, Rule 3(a) (2021). Any action or claim may be dismissed by the plaintiff without order of court by filing a notice of dismissal at any time before the plaintiff rests his case. N.C.G.S. § 1A-1, Rule 41(a) (2021).

"It is well settled that a Rule 41(a) dismissal strips the trial court of authority to enter further orders in the case, except as provided by Rule 41(d) which authorizes the court to enter specific orders apportioning and taxing costs." *Brisson v. Kathy A. Santoriello, M.D., P.A.*, 351 N.C. 589, 593, 528 S.E.2d 568, 570 (2000) (cleaned up). "After a plaintiff takes a Rule 41(a) dismissal, there is nothing the defendant can do

to fan the ashes of that action into life, and the court has no role to play." *Id.* (cleaned up). "A universal principle as old as the law is that the proceedings of a court without jurisdiction of the subject matter are a nullity." *Burgess v. Gibbs*, 262 N.C. 462, 465, 137 S.E.2d 806, 808 (1964).

¶ 73        "An application to the court for an order shall be by motion which, unless made during a hearing or trial or at a session at which a cause is on the calendar for that session, shall be made in writing, shall state with particularity the ground therefor, and shall set forth the relief or order sought." N.C.G.S. § 1A-1, Rule 7(b)(1) (2021). On motion and upon such terms as are just, the court may relieve a party from a final judgment, order, or proceeding for mistake, inadvertence, surprise, or excusable neglect. N.C.G.S. § 1A-1, Rule 60(b) (2021). However, "[a] voluntary dismissal with prejudice, or a voluntary dismissal without prejudice, once a year has elapsed and the action cannot be refiled, constitutes a final adjudication subject to relief under [Rule 60(b)]." G. Gray Wilson, 2 *North Carolina Civil Procedure* § 60-2 (4th ed. 2021) (footnotes omitted).

¶ 74        On May 31, 2018, plaintiff commenced her Chapter 50B action against defendant upon the filing of her "Complaint and Motion for Domestic Violence Protective Order." Later that day, plaintiff dismissed her Chapter 50B action against defendant by filing a notice of voluntary dismissal. Plaintiff's voluntary dismissal of the Chapter 50B action was filed eight minutes after she filed a Chapter 50C

"Complaint for No-Contact Order for Stalking or Nonconsensual Sexual Conduct." Plaintiff subsequently attempted to withdraw the voluntary dismissal she had filed by striking through the paper with a diagonal line, writing the word "amended" at the top along with a sentence at the bottom explaining "I strike through this voluntary dismissal. I do not want to dismiss this action." Plaintiff filed these various documents pro se and the trial court granted her motion for a Chapter 50C temporary no-contact order, denied her motion for a Chapter 50B emergency DVPO, and set the matter for a plenary hearing on the merits for June 7, 2018. As defendant was not present at the initial hearing, she was not provided with notice of the complaints until after the May 31, 2018. Defendant was never served with the voluntary dismissal of the Chapter 50B action.

¶ 75        At the June 7, 2018, hearing, plaintiff was represented by two attorneys. Defendant did not file an answer to either complaint, appeared pro se, and did not raise any objections during the hearing. In fact, according to the transcript, defendant spoke just once during the hearing in which she acknowledged to the trial court her understanding of the Chapter 50C no-contact order. Despite the fact that plaintiff's voluntary dismissal had already "strip[ped] the trial court of authority," *Brisson*, 351 N.C. at 593, 528 S.E.2d at 570, over the Chapter 50B claim, the trial court entered an order dismissing the Chapter 50B complaint on other grounds and granted the Chapter 50C no-contact order.

¶ 76    The majority does not take issue with the trial court's lack of jurisdiction. Rather, the majority relies on the notion that trial courts have broad discretion to take any action within the law to ensure a fair and impartial trial "so long as he [or she] does not impinge upon [statutory] restrictions." The majority further states that "[w]hen there is no statutory provision or well recognized rule applicable, the presiding judge is empowered to exercise his [or her] discretion in the interest of efficiency, practicality, and justice." One glaring gap in this logic, however, is that there *is* a statutory provision and well recognized rule such that a trial court's exercise of jurisdiction after a complaint has been voluntarily dismissed *does* impinge upon such statutory restrictions. *See* N.C.G.S. § 1A-1, Rule 41(a); *Brisson*, 351 N.C. at 593, 528 S.E.2d at 570.

¶ 77    According to the majority, plaintiff's voluntary dismissal "served as [a] functional Rule 60(b) motion through which the trial court could, and did, grant equitable relief." Untethered to the rules, the majority divines the intent of plaintiff, stating that "courts should not put themselves in the position of failing to recognize what is apparent to everyone else." Thus, the majority reasons, "[i]t was squarely within the discretion of the trial court to understand the plain intent of plaintiff's amended notice of voluntary dismissal as a Rule 60(b) motion for equitable relief or her amended Chapter 50B complaint as a functional refiling, and to subsequently exercise its jurisdiction." However, this approach is contrary to the Rules of Civil

Procedure as plaintiff filed no motion with the Court, there was no final judgment, and her attorneys never requested the relief granted by the majority today. N.C.G.S. § 1A-1, Rule 7(b)(1), N.C.G.S. § 1A-1, Rule 60(b). The idea that plaintiff's filing was a motion pursuant to Rule 60(b) likely comes as a surprise to the trial court and both of plaintiff's counsel below. Nowhere in the transcript or the trial court's order is it intimated that the trial court "underst[ood] the plain intent of plaintiff's amended notice of voluntary dismissal as a Rule 60(b) motion for equitable relief or her amended Chapter 50B complaint as a functional refiling." Indeed, neither of plaintiff's attorneys argued before the trial court that the diagonal strikethrough and statement on the voluntary dismissal should in any way be considered as a Rule 60(b) motion. If neither the trial court nor plaintiff's lawyers recognized plaintiff's "mistaken or inadvertent dismissal" as a Rule 60(b) motion, it is difficult to comprehend how "every intelligent person underst[ood what was] meant." There plainly was never a subsequent motion filed by the plaintiff upon which the trial court could grant the relief allowed by the majority.

¶ 78    It is interesting that in one breath the majority claims there is "no doubt as to plaintiff's intentions" and in another, the majority concedes that it "cannot know precisely from the record whether the trial court considered [the amendment to the voluntary dismissal as a Rule 60(b) motion or a refiling of the Chapter 50B complaint] when it determined that it had jurisdiction." Further, according to the majority,

plaintiff and her counsel "likely did not" intend for her amendment to the voluntary dismissal or her amended Chapter 50B complaint to serve as a 60(b) motion or a formal refiling, respectively. Even assuming "every intelligent person" should understand what plaintiff intended based on documents in the court file, the majority is apparently uncertain itself about whether plaintiff was refiling her Chapter 50B complaint or requesting relief pursuant to Rule 60(b).[1]

¶ 79          Rule 60(b) is meant to relieve a party from a final judgment, order, or proceeding. N.C.G.S. § 1A-1, Rule 60(b). It strains credibility for this Court to contend that plaintiff's "inadvertent or mistaken voluntary dismissal" was in fact a Rule 60(b) motion as no final judgment had been entered, and plaintiff was ineligible for such relief under the plain wording of the rule. *See Robinson v. General Mills Restaurants, Inc.*, 110 N.C. App. 633, 637, 430 S.E.2d 696, 699, *review allowed* 334 N.C. 623, 435 S.E.2d 340 (1993), *review denied as improvidently granted* 335 N.C. 763, 440 S.E.2d 274 (1994) (holding that "once the one-year period for refiling an action has elapsed and the action can no longer be resurrected, the voluntary dismissal acts as a final adjudication for purposes of Rule 60(b)"); *see also* Wilson, 2 *North Carolina Civil Procedure* § 60-2 (footnotes omitted) (a voluntary dismissal is

---

[1] Treating plaintiff's voluntary dismissal as a new civil action disregards the filing requirements set forth in Rule 3; issuance of a summons as required by Rule 4; service requirements in Rule 5; and the fact that, if this were new action, the Clerk of Court would have assigned a separate file number.

not a "final adjudication subject to relief under [Rule 60(b)]" unless "a year has elapsed and the action cannot be refiled[.]").

In reaching their decision, the majority ignores that the Rules of Civil Procedure apply to Chapter 50B proceedings. N.C.G.S. § 1A-1, Rule 1; N.C.G.S. § 50B-2(a). Instead, the majority bases its reasoning on the purpose of Chapter 50B — "provid[ing] a method for trial court judges or magistrates to quickly provide protection from the risk of acts of domestic violence by means of a process which is readily accessible to *pro se* complainants." While the purpose of the statute is important, it does not provide a license to ignore the Rules of Civil Procedure, or the due process rights of an adverse party.

The majority proclaims that "[p]laintiff here is exactly the type of complainant that the *pro se* provisions of Chapter 50B contemplate: one who is navigating the complex arena of legal procedure for the first time, without the assistance of legal counsel, soon after experiencing significant trauma." Notably, however, the majority fails to discuss that plaintiff was represented by not one, but two attorneys at the hearing. *Cf. Brown v. Kindred Nursing Centers East, L.L.C.*, 364 N.C. 76, 84, 692 S.E.2d 87, 92 (2010) ("[I]t it well settled that 'the rules [of civil procedure] must be applied equally to all parties to a lawsuit, without regard to whether they are represented by counsel.' ").

Importantly, defendant never received notice that plaintiff had filed a

voluntary dismissal in the Chapter 50B action. In addition, and unsurprisingly, defendant had no notice that the trial court was considering a Rule 60(b) motion, again, because plaintiff's two attorneys did not make the motion and the trial court did not rule on any such motion. The majority's professed concern for pro se litigants does not seem to apply to this defendant, who was, ironically, the only party to appear pro se.

¶ 83        The law going forward appears to be that, even if the Rules of Civil Procedure yield a particular result, trial courts are free reach a contrary outcome so long as an "intelligent person understands [what] is meant[.]" *But see Goins v. Puleo*, 350 N.C. 277, 281, 512 S.E.2d 748, 751 (1999) (stating that "the Rules of Civil Procedure promote the orderly and uniform administration of justice, and all litigants are entitled to rely on them"); *Pruitt v. Wood*, 199 N.C. 788, 790, 156 S.E. 126, 127 (1930) ("When litigants resort to the judiciary for the settlement of their disputes, they are invoking a public agency, and they should not forget that rules of procedure are necessary and must be observed[.]").

¶ 84        The Rules of Civil Procedure either apply or they don't. The rules provide certainty for all parties involved in civil litigation. By failing to adhere to these basic rules, the majority makes our system of justice less predictable and causes our law to become more unsettled. The majority's new "mistaken or inadvertent dismissal" rule is antithetical to our adversarial system and will disrupt the orderly flow of cases

through our trial courts under the guise of "facilitat[ing] access to justice[.]"  This is not a case in which the record shows that the parties and trial court knew that relief under Rule 60(b) was sought or where the trial court granted relief under Rule 60(b). Thus, the majority's approach shifts appellate review from the text of the rules and the arguments of the parties in the trial court to allow reverse engineered arguments based on sympathies and desired results.

Chief Justice NEWBY and Justice BARRINGER join in this dissenting opinion.